Pennsylvania Department of Education, Scranton State School for the Deaf, Petitioner *v.* Mark C. White, Respondent.

Argued February 5, 1981, before Judges BLATT, MACPHAIL and WILLIAMS, JR., sitting as a panel of three.

*Wayne M. Richardson,* Assistant Attorney General, for petitioner.

*Brigid E. Carey,* for respondent.

OPINION BY JUDGE BLATT, July 17, 1981:

This is an appeal from an order of the Pennsylvania State Civil Service Commission (Commission) which directed the Department of Education (Department) and the Scranton State School for the Deaf (School) to reinstate Mark C. White (White) to the position of Pupil Personnel Services Director (PPS Director) at the school.

In July, August and September of 1975, prior to the time of White's employment, the superintendent of the school had unsuccessfully sought the approval of the Board of Trustees (Board) for the creation of the position of PPS Director, and the Board had voted at its September, 1975 meeting to table indefinitely any consideration of this suggestion. The Superintendent did not subsequently request Board approval of the position.

White began his employment at the school in March of 1976 as a probationary Social Worker II and in September of 1976, he attained regular status in that job. In October, 1976, the superintendent established a Pupil Personnel Services Committee (Com-

mittee) to aid in providing better support services at the school. It was to be composed of appropriate school personnel and the chairmanship of the Committee was to be rotated among them. This was not a classified position, and its duties were to be assumed by the current acting chairman in addition to his or her normal responsibilities. Two months after the Committee's inception, however, White was selected to be chairman. In February, 1977, while researching job classifications in the Compensation Plan of the Commonwealth of Pennsylvania, White discovered a position titled "Pupil Personnel Services Director, Scranton Oral School," followed by the word "vacant", and he then secured a job description from the Office of Classification and Pay of the Department of Education. Upon determining that he was performing virtually all the duties outlined in the job description, on February 28, 1977, White submitted documents to the superintendent requesting reclassification of his position from Social Worker II to PPS Director. The superintendent replied as of the same date:

> While I recognize that you are, in fact, performing the duties as described for a PPS Director, I am not able to recommend your reclassification. The Board of Trustees of this institution has indefinitely tabled consideration of this position, and until such time as they modify their stance, I am not able to act.

The superintendent then forwarded White's request to the Department of Education which, in May, 1977, following a desk audit of White's duties, notified him that the position reclassification had been approved. White then applied to the State Civil Service Commission for certification to the position and, upon attaining the requisite experience, was certified on November 15, 1977 as eligible for the PPS Director's position. He was thereafter paid accordingly by the school

although his alleged appointment had never been approved by or brought to the attention of the Board.

Despite inquiries made of the superintendent by Board members as to White's status at the school, the Board did not learn of White's alleged appointment as PPS Director until the time of the superintendent's resignation, when, in a memorandum to the school staff dated January 6, 1978, he said, "It is a pleasure to inform you that through the Civil Service reclassification procedure, two additional personnel changes have occurred. Mrs. Barrett is the new Education Director[1] and Mr. White is the Director of Pupil Personnel Services." The Chairman of the Board immediately notified the Secretary of Education and indicated the Board's distress at learning of these personnel promotions which had been effected contrary to Board policy, noting that the creation of the position of PPS Director had been tabled indefinitely and had never been approved while the position of Director of Education was presently open and unfilled, awaiting Board selection of a candidate. A "constant and continuous" dialogue between the Department and the Board ensued, culminating in a resolution passed at the November 20, 1978 Board meeting by which the Board accepted the legal findings of the Department and a letter was sent to the Secretary of the Department recommending that the situation be corrected and advising that both Barrett and White were to be "reclassified to their former positions." On March 9, 1979, the Department notified White by way of a No-

---

[1] The minutes of the Board meeting of August 24, 1977, indicate that the Board had decided to defer appointment of a new Education Director pending advertising of the position in trade journals and had agreed to divide the position's duties between the middle school and lower school supervisors in the interim rather than temporarily appointing Mrs. Barrett to the position lest she be disappointed in the event she was not the Board's ultimate choice.

tice of Demotion that, effective March 24, 1979, he was to be returned to the position of Social Worker II because his promotion had been invalid inasmuch as it had been made without the approval of the Board. White appealed to the Commission.

Following a hearing, the Commission concluded that under Section 706 of the Civil Service Law (Law),[2] White had been improperly demoted and ordered him reinstated to the position of PPS Director, reasoning that although the statutory authority to appoint to positions at the school lay with the Board,[3] from October, 1975 until November, 1977, it had through inaction, left to the superintendent the effective authority to appoint with regard to promotions without examination. The Commission then determined that White's placement as PPS Director had been a valid promotion under the Law, reasoning that the reclassification implemented by the Department was for the position occupied by White, not for White

---

[2] Section 706 of the Civil Service Law, Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §741.706.

[3] Section 1311 of the Administrative Code, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §361, provides in pertinent part:

The Board of Trustees of Scranton State School for the Deaf . . . shall have general direction and control of the property and management of their respective institutions. [The Board of Trustees] shall have the power and its duty shall be:

(a) Subject to the approval of the Governor to elect a president, principal, or superintendent, of the institution, who shall, subject to the authority of the board, administer the institution. . . .

(b) On nomination by the . . . superintendent, from time to time, to appoint such officers and employes as may be necessary;

. . . .

(d) Subject to the approval of the Secretary of Education, to make such by-laws, rules and regulations for the management of the institution as it may deem advisable.

himself, and that White was then promoted by the Commission to the reclassified position.

The school appealed this determination, asserting that the Commission had capriciously disregarded evidence that the superintendent had usurped the appointing authority of the Board in making promotions without examination and without the knowledge or approval of the Board and that, therefore, absent Board authorization, White's appointment had been null and void ab initio.

Our scope of review of a decision of the Commission, as defined by Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, is to determine whether constitutional rights were violated, an error of law was committed or a necessary finding of fact was unsupported by substantial evidence and we are required to affirm the Commission in the exercise of its administrative discretion even though we might have reached a different result, as long as a reasonable mind might reach the same decision on the basis of the evidence before the Commission. *Losieniecki v. Pennsylvania Board of Probation and Parole,* 39 Pa. Commonwealth Ct. 194, 395 A.2d 304 (1978).

The Commission found that the effective authority to appoint, at least with regard to promotions without examination, had, through inaction of the Board, been left to the superintendent. The evidence, however, does not support such a finding as to the position of PPS Director. When, in 1975, the superintendent repeatedly urged creation of the position, the Board clearly indicated its disinclination to do so,[4] and in September 1975 voted to table consideration of the post indefinitely, and on February 28, 1977, the super-

---

[4] A vacant position need not be filled if it is found to be in the interest of the service of the Commonwealth not to do so. Section 602 of the Law, 71 P.S. §741.602.

intendent, in reply to White's request for reclassification, informed him of the Board's stance. The record clearly indicates that the Board exercised, and, therefore, did not delegate to the superintendent, its authority with regard to the PPS Director's position; that both the superintendent and White were aware of the Board's decision; that, despite inquiries by the Board as to White's status, the superintendent did not inform the Board as to the course White was pursuing; and that the Board did not become aware of White's elevation in rank as of November 15, 1977 until the time of the superintendent's departure on January 6, 1978, to which news the Board immediately responded.

White contends, and the Commission has so held, that his promotion without examination was valid under the Civil Service Law and that his demotion was, therefore, improper.

Section 501 of the Law, 71 P.S. §741.501, provides in pertinent part:

> The commission . . . may permit promotions to be accomplished by any one of the following plans: . . . (3) by promotion based upon meritorious service and seniority to be accomplished by appointment without examination, if (i) the person has completed the probationary period in the next lower position, (ii) he meets the minimum requirements for the higher position, and (iii) he receives the unqualified recommendation of both his immediate superior and the appointing authority of his department or agency.

A "promotion" is defined as "a change to a position in a class carrying a higher maximum salary,"[5] and a "demotion" as "a change [in status] to a position in a

---

[5] Section 3(u) of the Law, 71 P.S. §741.3(u).

class carrying a lower maximum salary."[6] Section 705 of the Law, 71 P.S. §741.705, further provides that:

Any transfer of an employe from a position in one class to a position in a class for which a higher maximum rate of compensation is prescribed shall be deemed a promotion and may be accomplished only in the manner hereinbefore provided for the making of promotions.

Section 501 of the Law requires that a candidate for promotion without examination must receive "the unqualified recommendation of *both* his immediate superior and the appointing authority of his department or agency" (emphasis added), and in the absence of such a recommendation by the Board, or of the functioning appointing authority with regard to the PPS Director's position, promotion without examination could not be accomplished.

Consequently, in view of the Board's decision which remained unchanged during the period at issue, not to create the position of PPS Director, no position existed to which White could have been promoted and, even if such a position had existed, absent the unqualified recommendation of the Board required by the statute, White failed to qualify for promotion without examination.[7]

The Commission's basic premise that White's promotion without examination was valid must fail and, with it, the conclusion that he was therefore improp-

---

[6] Section 3(r) of the Law, 71 P.S. §741.3(r).

[7] The legislature has invested the appointing authority with a pervasive role in the promotion process. It is to indicate to the executive director of the Commission if a position is to be filled and, in the event that it is, the authority is involved in the selection and appointment of eligible candidates to it. Sections 601 and 602 of the Law, 71 P.S. §§741.601 and 741.602. During the probationary period it is required to report its observations and evaluations of

erly demoted; a demotion cannot occur from a position to which a valid promotion could not have been made. Inasmuch as White was never validly promoted, he remained a Social Worker II, and the ultimate action of the Department in "returning" him to that classification merely reflected that fact and, therefore, was not "a change [in status] to a position in a class carrying a lower maximum salary."[8] Consequently, Section 706 of the Law which deals with the Board's appointing authority with regard to demotions does not come into play. The sequence of events involved here was triggered by an administrative error on the part of the Department when it reclassified the job being performed by White to that of PPS Director, an unauthorized and, consequently, unactivated, position. It was, therefore, proper for the Board, which had refused to activate the position, to look to the Department as the appropriate source of corrective action.

To permit an employee to parlay the combination of his permanent duties and his temporary additional rotating duties into a higher job classification which he knew the Board had declined to establish would be to place this Court's imprimatur upon a circumvention of the intent manifested by the legislature in its designation of appointing authorities with statutorily delineated powers and duties to appoint, promote, demote and otherwise deal with state agency personnel.

For the foregoing reasons, we must reverse the decision of the Commission and thereby affirm the action taken by the Department of Education.

---

the candidate to the director and is invested with authority to remove a candidate at any time during that period if, in its opinion, the employee is unable or unwilling to satisfactorily perform the duties of the position. Sections 603 and 804 of the Law, 71 P.S. §§741.603 and 741.804. The Board here was obviously not afforded the opportunity to exercise its legislative mandate.

[8] 71 P.S. §741.3(r).

### ORDER

AND Now, this 17th day of July, 1981, the order of the Civil Service Commission in the above-captioned matter is reversed.

Judge WILKINSON, JR. did not participate in the decision in this case.